The next case on our call this morning is Agenda Number 13, Case Number 105532, Maxit, Inc. v. John Van Cleve, et al. Mr. Pfeiffer, are you ready to proceed? You may proceed. Thank you, Justice Thomas. May it please the Court? My name is Matthew Pfeiffer. I represent Maxit, Inc., the appellant before this Court. This case provides the opportunity for this Court to analyze various public policy considerations and to determine whether and to what extent a written agreement for the release of and indemnification from certain claims may be enforced. This opportunity arises based on a truly unique set of facts. In December of 2001, the appellee, John Van Cleve, was involved in an auto accident during the scope of his employment with Maxit. He submitted a claim under Maxit's underinsured motors policy and also filed a workers' compensation claim with the Industrial Commission. In September of 2004, September 3rd to be precise, Mr. Van Cleve's attorney demanded settlement of some outstanding medical bills. A week later, the Van Cleves and Maxit entered into a settlement of all claims, and both Maxit and the Van Cleves were represented by counsel. They entered into what was titled a release of all claims. And the release of all claims stated that in consideration of a payment of $800,000 to the Van Cleves, they released, acquitted, and forever discharged Maxit for many and all actions in any way growing out of or related to any personal injuries and property damage resulting or to result from an accident that occurred in December of 2001. Mr. Pfeiffer, let me ask you a question on that. Certainly. The release that you're referring to, is that the one that's on page A6 of your appendix? It is, Justice Gilbert. Okay. In the first paragraph, it's in bold letters, I think it's the third line, it says, Maxit, Inc., Transportation Insurance Company. Yes. So that's the party who's being released? Well, Maxit, Incorporated is a separate entity from Transportation Insurance Company. Both of those entities are identified as the releasees, as the parties being released under this release of all claims. Who is the actual employer of the? The actual employer of the individual that was injured was Maxit, Incorporated. Maxit? Maxit, Incorporated. So those are two separate corporations? Yes. Is Maxit, Incorporated listed at all in this release? In terms of? Are they identified at all in the release? Other than that third line of the release of all claims, I believe they are not. They're defined throughout as the releasee, but other than that third line, I don't believe they're identified in the release. Okay. You've got to help me on that. I'm not sure where you're referring to. On the third line of the release of all claims. You're talking about in the first paragraph? Right. And Maxit and Transportation are defined as releasees jointly. That's the only reference to Maxit within this release of all claims. But they're not specifically named. You're saying they fall within that group of agents, servants, successors, et cetera? No, I'm saying that on the third line of the release of all claims, it says hereby release, acquit, and forever discharge Maxit, Incorporated. That's the only reference to Maxit, Incorporated that's in the release. Okay. Specifically to Maxit, Incorporated. All right. While we're on the wording of the release, Mr. Pfeiffer, nowhere in that release is there an indication that the workers' compensation claim is settled. Is that right? Specifically. I know your position is that generally releases all claims, but there is no mention of the workers' compensation claim as being settled. That is true, Chief Justice. And there is no provision in the release either, is there, that there will be approval sought from the commission? That language is not in the release at all. I know that's one of the issues that we're going to be discussing down the road. And factually, it is a rare occurrence because Maxit did not have workers' compensation insurance either. Right. At the time of the injury, as stated in the pleadings, there was no issue. There was no compensation coverage in place at the time. Okay. At the time of the injury. Okay. And while we're on interpretation, shouldn't we consider the language of the release as a whole rather than paragraph by paragraph? I think so. I think contract law is well established. You have to take all of the terms together. You can't isolate certain provisions. You have to read the entire document as it sits. You can't focus on specific language in one specific provision. Well, on that point, let me ask you another question. Looking at the whole of the document, on page one, the third paragraph from the bottom, that's just one sentence, that indicates that we further agree that this release should not be pleaded by us as a bar to any claim or suit. I see that, yes. Why does that not include the workers' compensation claim? The release shall not be pleaded by us as a bar to any claim or suit. That's intended to be an obligation on the part of the Van Cleves not to defeat any attempt by MAXIT to raise this release in any subsequent proceeding. What this release does is it specifically releases any and all claims that were pending at the time of the execution of the release. So that would cover the workers' compensation claim, and it would cover the underinsured motorist policy claim that was then pending. Both of those claims were pending at the time of this release. What the position of the Van Cleves was and the position of the appellate court was, is that because the workers' compensation claim wasn't set forth in this release specifically, the only way you could interpret this document is to exclude the workers' compensation claim from coverage under this release. And that's simply not the case. The court in Heard v. Wildman Herald indicated that anytime you have a general release, if there are known claims that were pending at the time of the execution of the release, those claims are necessarily included within the scope of the release. So our position is, as the workers' compensation claim was pending at the time, and, in fact, the demand was made a week before the execution of the settlement agreement to settle some of the damage that was part of the workers' compensation claim. Counsel, where does the Section 23 come in then, the Workers' Compensation Act? Well, Section 23, in our opinion, respectfully, is not applicable to the facts of this case. It's not triggered by this release of all claims. The only issue involved with this release, as the trial court noted, is whether or not there was a valid release in place and whether it was breached by the Van Cleves. If you read Section 23 of the Workers' Compensation Act, there's two operative provisions. One is that no employee shall have the power to waive any provisions of the act with regard to compensation that they may receive under the act. Then there's a second operative portion that holds that any employer who enters into any payment purporting to settle or compromise a claim without obtaining approval from the commission shall be barred from raising the defense of limitation in any proceedings subsequently brought by the employee. Nothing in that Section 23 of the Workers' Compensation Act relates to this narrow issue of whether the release was breached. We're not suggesting that Mr. Van Cleve had to waive any rights he had under the Workers' Compensation Act. He always had those rights. His only obligation under the release of all claims was to refrain from further pursuit of claims and indemnify Maxit to the extent that he did pursue further claims. The trial court noted that this really boils down to a breach of contract issue, and because of that it doesn't really implicate the Workers' Compensation Act. You are not saying that Maxit doesn't maintain that the release signed by Van Cleve may constitute a waiver of his claims for purposes of the act? No, Your Honor. What we're saying is he didn't waive any rights. He didn't give up any rights under the Workers' Compensation Act. What he did was agree to indemnify Maxit to the extent that he chose to pursue any further claim against Maxit. So in other words, he had every right to go back to the commission and say, you know what, I want to pursue this workers' compensation claim. But if he did that, that would trigger Maxit's right under the release of all claims to ask for him to indemnify Maxit for any damage suffered as a result of him pursuing this further claim. Another part of the – That's not splitting hairs. I don't think – You're saying he's signing an agreement that he can go pursue his claim, his workers' compensation claim, but realize that you have already signed a release that's going to indemnify Maxit against that claim. Well, and we have to take – Isn't that getting around 23? I mean, isn't that an end-around around 23 that says you have to go to the commission if you're going to settle your workers' comp claim? I don't think, Your Honor, that it is an end-around around the commission. And I think the trial court picked up on that. The appellate court seems to focus on Section 23, and what the trial court correctly decided was that this was not a case that implicates Section 23. It really is just a breach-of-contract case. What about our case in Zurich that says that it's long been settled that an employer may not ignore this provision of the act and enter into a settlement with its employee without approval of the commission? Well, there's a couple of issues with Zurich. First, I must point out the release of all claims and Section 23, I don't believe, puts an onus on the employer to affirmatively appear before the commission to have the settlement approved. The settlement was in place. The release was in place. It was, at the time, Mr. Van Cleave's and Mrs. Van Cleave's duty to not pursue anything further with respect to asserting a claim against Maxit. They had the right under the release to abandon the claim in the workers' compensation claim before the commission. They had the ability to pursue a further claim. They had the ability to go before the commission themselves and present the settlement and ask for approval. But there's nothing in the release of all claims, and there's nothing in Section 23, that affirmatively requires the employer to pursue the commission's approval of a settlement. And that against Zurich? And what about Zurich? Well, with respect to Zurich, the appellate court did cite that in its opinion, and it cited it for the proposition that an employer can't enter into a settlement with an employee without approval from the commission. However, the facts in Zurich and the issues involved in that case, I think, were vastly different than what we're dealing with here. In Zurich, the issue facing the court was who, as between an employer and an employer's insurance carrier,  didn't have a workers' compensation policy renewed. Zurich didn't involve this, again, unique set of circumstances where we have a release and an indemnity agreement between an employer and an employee. This is something unique to this case that wasn't in Zurich. So I don't know that the holding in Zurich is necessarily applicable here, only because we have this release and indemnity agreement that required Mr. Van Cleve to indemnify Maxit from any further claims. Unlike Zurich, the case here involves a unique question of law, which is whether Section 23 applies in the face of a written release, a written undertaking, a written obligation by Mr. Van Cleve to refrain from any further pursuit of claims against Maxit that he knew were pending at the time he entered into the release, which he did with the advice of counsel, who also signed the release. And it did not obligate him in any way to waive any rights. It did not obligate him in any way to give up his claim through the commission. It only required that he indemnify Maxit from any further damage or loss that resulted from his further assertion of claims. But as for Zurich, I don't know that it's really applicable, because we're dealing with a truly unique circumstance of having a release and indemnity agreement. I want to focus a little bit on this release of all claims, because I think what's lost in all of this is the really operative portion of the release, and that's Paragraph 3. In consideration of the payment that the Van Cleves received, they agreed to indemnify and hold forever harmless the releasees, which includes Maxit Incorporated, for many and all claims of any kind in nature that have been or may hereafter at any time be made or brought against the releasees for purpose of enforcing a further claim for damage on account of the alleged damages or injuries sustained in consequence of the aforesaid accident. And I think that's the ultimate key to this case. Did they agree to abandon their claims, and then if they sought to pursue further claims, did they agree to indemnify Maxit? This portion of the release clearly indicates that they had an affirmative duty to indemnify Maxit Incorporated in the event that they pursued any further claim. Given the fact that the workers' compensation claim was pending at the time this release was signed, I don't know how you can arrive at the interpretation that the appellate court did that it can't encompass the workers' compensation claim. HERD provides that if you have a general release and a general blanket release of all claims, that it necessarily includes any claims that are pending at the time the release is signed. That's exactly the situation we have here. We had a workers' compensation claim that was pending. We had an underinsured motorist policy claim that was pending. And this release sought to globally resolve all of those claims. The fact that it's not mentioned in here is really of no import. The release itself is titled Release of All Claims. There is no specific mention of the workers' compensation claim itself, but again HERD suggests that you don't need to have a specific reference to any particular claim if there are known claims pending at the time the release is signed. Counsel, could I go back to your argument you just finished with in that first paragraph? When you say it's a global release covering, at the end of that paragraph, the last sentence, it says, comma, and covered by the underinsured motorist policy provisions and policy number 103, et cetera. Doesn't that and clause at the end specifically refer to that insurance policy kind of button in? In an umbrella, what's covered under that umbrella argument and limited to that policy? Well, we submit that that language is sort of like the situation in Whitlock. It's just noting a particular claim of a subset of all claims that is particularly being released. In Whitlock, there was a release agreement that recited a release of all actions, claims, et cetera, and particularly all claims relating to a specific loan. And this court construed such language to mean that there was a release of all claims, including those specifically mentioned. It didn't isolate it to that one claim. I think that's the situation we have here. We have any and all known and unknown personal injuries and property damage resulting from an accident on or about December 26, 2001. And then the rest of that sentence deals with a particular claim out of the any and all claims that's being released. The comma after the date, I think, should be of significance to this court. I think that the comma that follows the date can only be interpreted as the coverage of the underinsured motorist policy provisions being inclusive of any and all claims. Without the comma, I think you do have a situation possibly where it would be any and all claims that resulted from the accident on that date and also satisfies a requirement of being covered under that policy. With the comma in place, I think it makes a difference. I think that with the comma reads to include any and all known and unknown personal injuries and property damage, including the claims covered by the underinsured motorist policy. Now, I see that I'm running a little bit short on time. I want to focus on the appellate court's opinion a little bit. And the appellate court relied on Section 23 and on Whitlock almost exclusively. Again, the appellate court applied Section 23 where I think it has no import in this case. The case involves only the issue of whether the Van Cleves breached the contract. It doesn't involve anything more. It doesn't involve anything less. It's simply whether they breached the release of all claims. Section 23 provides for two things. Employee can't waive rights under the Compensation Act. And the employer can't use the release to bar any further claims. I'll deal with the rest of that. Thank you, Mr. Pfeiffer. Thank you. Mr. Kelly. Good morning, Your Honors. Good morning, Counsel. May it please the Court, my name is William Kelly, and I represent the interests of John Van Cleve and Kelly Van Cleve in this matter. I must admit that although I'm honored for the first time to be standing before this Court, I never would have expected it when I was first retained to represent John and Kelly Van Cleve back in 2005. When I read their complaint in the subject release, I was convinced and sure that the complaint had no merit and that I would be able to dismissal that case on a motion. As they say in basketball, I thought it was going to be a slam dunk. I first read the language of the release, which specifically says that the releasing claims that were under the accident came within the accident and were covered by the underinsured motorist policy. I learned that the underinsured motorist policy did not cover workers' compensation claims. To me it was clear that workers' compensation claim was not settled under the plain language of the release. And it seems ironic to have this case come after another case. It has to interpret the word and as it was in the prior case. At the time I read the complaint, I was familiar with Section 23 of the Act as I had been involved with workers' compensation cases. I knew that Section 23 of the Act says, no employee shall have power to waive any provisions of the Act in regard to the amount of compensation except after approval by the Commission. I knew the Commission had not approved this settlement. So again, I was convinced this case was going nowhere. I also knew that at the time John Van Cleve signed the release, he never intended to release his claims, as was part of the record. His attorney advised him that under Section 23 of the Act, by signing the release he was not waiving those claims. Like any good lawyer, though, I decided, well, maybe I'm missing something. I decided to do some more research. At the time of the research, I found such cases as Zurich General Accident and Liability v. The Industrial Commission, 325 Illinois 452, International Coal and Mining Company v. The Industrial Commission, 293 Illinois 524, Kelly Atkinson Construction Company v. Foreman Brothers Banking Company, 218 Illinois Appellate 345, and the case of La Graza v. Pinozzo, 168 Illinois Appellate 3rd 355. Each of these cases emphasized that any purported settlement, not using the word waiver, not using the word release, any purported settlement between an employer and an employee in connection with a worker's compensation claim must be approved by the Industrial Commission. The more I looked at Max's complaints and their arguments, and the more research I did, the more questions I had. I could not understand Max's argument that it settled the worker's compensation solely in mitigation of its damages. I had never in my over 20 years of practice seen an argument in this context. Usually when you have a party that's claiming a breach and they need to mitigate their damages,  for example, a seller of goods sells non-conforming goods. They go to a third party to cover. They buy those goods from a third party. And I had never heard of a case where a non-breaching party allegedly mitigates its damages by paying the purported breaching party. I thought, well, there must be some case law in this. Well, lo and behold, as I did my research, I found none. I could not find any case that suggests that somebody could pay their breaching party and then seek to recover those damages. And as I did that research, I came up with the fact that I believe the voluntary payment prevents such a scenario. To me, this is a prime example of what the voluntary payment doctrine seeks to prevent. Here, Maxitt voluntarily pays John Van Cleave upon John Van Cleave's demand in the workers' compensation case. As we cited in our brief, if they believed John Van Cleave's demand to be improper, they should have asserted it at the threshold. That is, they should have asserted it before the Industrial Commission. So that came to my next question. Why didn't they assert the release before the Industrial Commission? Why didn't they go before the Industrial Commission and say, his claims are released? The answer really is simple. They knew under Section 23 of the Act, the Industrial Commission would deny it. And that raises an issue that is, I think, very important in this case. As counsel has indicated, this action occurred in 2001, and Maxitt did not have insurance coverage. And if you look at the dates, you'll see the first time any monies were paid on this case was in 2004. At that point, John Van Cleave had incurred $180-some-thousand in medical bills that had gone unpaid. Those had to be paid. Medical providers were after him. The settlement, I'll use a term, under the underinsured motorist policy, he had no choice. He had to get it done. He had to move on. And it was very important for him when he settled it that he was not waiving his claims under the Act because his claims were far greater than that. You'll also see as part of the record that his claim before the Illinois Workers' Compensation Commission, the Industrial Commission, was asserted by his counsel to be $665,000. Now, we know that workers' comp doesn't cover anything for pain and suffering, but what's important about this is that included claims of over $126,000 that Maxitt faced in penalties. They had an incentive to settle that workers' compensation case, And I believe the arguments that they've made about mitigation of damages is just a ruse to try to recover that. They shifted what should have been the jurisdiction of this matter from the Industrial Commission. They purport to settle a $665,000 case for $200,000, and they remove it then from the jurisdiction of the Industrial Commission to the Circuit Court of DuPage County. And they avoided the risk of significant penalties. Now, Maxitt further attempts to support its arguments and its complaint by saying that John Van Cleave obtained a double recovery. I haven't seen them cite any case law that supports this, but they say it just because he referred to the same medical bills. Now, again, remember Maxitt had an obligation to pay those medical bills under the Workers' Compensation Act. It failed to do so. As he's trying to settle his underinsured motorist claim, he settles his medical bills. That doesn't obviate Maxitt's obligations under the Illinois Workers' Compensation Act. In addition, the reference to medical bills is a very typical scenario in cases where there's workers' comp case and a potential third-party action. In this particular instance, the, quote, third-party action was under the underinsured motorist policy. And medical bills are very often used to set a value on a claim. They're trying to say that we tried to recover those bills twice. That's not true. There are different coverages. I think the case law supports the fact that this isn't a valid claim on their part. In addition, as we cited in the briefs, the double recovery doctrine doesn't apply when there's a voluntary settlement. Now, obviously, the heart of this case is under Section 23 of the Workers' Compensation Act. Maxitt's argument is premised on its assertion that John Van Cleve, by signing the release, did not, quote, waive his rights under the act. As Chief Justice Thomas has pointed out, I believe this is a matter of semantics, and it is an end run around the terms of Section 23 of the act because it really totally contradicts their assertion, which they state repeatedly within their brief, that John Van Cleve could not pursue his claims under the act, that he breached the release by pursuing those claims. There is no doubt in my mind that Maxitt maintains John Van Cleve settled his workers' compensation by signing the release. That's precisely what Section 23 of the act prevents. You cannot settle.  You can't settle a claim without getting the approval of the Industrial Commission. Now, Maxitt also tends to argue that their release doesn't provide them with any obligations because it enjoyed only contractual rights under the release as indemnity and releasee. This is, again, absolutely not true. Remember, at the time the release was signed, John Van Cleve had a pending workers' compensation claim. Maxitt, as John Van Cleve's employer, had both rights and obligations under the terms of the Illinois Workers' Compensation Act. As the court in Zurich General versus the Industrial Commission said, 325 Illinois 452, an employer bound by the provisions of the act is not permitted to relieve himself from liability under the act by a private agreement with his employer. This is precisely what Maxitt is attempting to do. As this court knows, Maxitt has asserted that the Illinois Supreme Court cases we've cited in our brief, Zurich General, International Coal, and Kelly Atkinson, are not binding on this court because they were decided before 1935. While that may be true, I do not believe this court should ignore the language of that, but more importantly, I have not seen anything that should change this court's opinion that was set forth in those cases. The language of the act has not changed. Does that maxim even apply to Supreme Court cases before 1935? I believe it applies to intermediate appellate court cases, doesn't it? I believe you're right. I do agree with that. But what I'm saying is even if it applies, even if that argument applies, I haven't seen any reasons given why those decisions should not govern. As I said, the general principles under the Workers' Compensation Act, the language of Section 23, none of that has changed. And if there's no questions, I don't know if you have any other questions, but I can only leave you with the language set forth in the International Coal case. And I know the appellate court didn't cite to it, but it said, the fundamental basis of workmen's compensation laws is that there is a large element of public interest in accidents occurring from modern industrial conditions and that the economic loss caused by such actions should not necessarily rest upon the public, but that the industry in which an accident occurred shall pay in the first instance for such accident. Yes, I agree with counsel that there are public policy considerations involved here. Those public policy considerations should be in favor of enforcing the terms of the Workers' Compensation Act, which, by the way, provides benefits to both employers and employees. The court in International Coal further states, it is contrary to the policy of the Act to allow an employer, while choosing to come under its provisions by not filing an election in writing to the contrary, to relieve himself from liability under the Act by private agreement or contract with the employee. I do submit, despite Max's arguments to the contrary, they did have an obligation. If they intended to settle the Workers' Compensation Act by signing a release, they had an obligation to bring that matter before the Industrial Commission and seek approval. Thank you, Mr. Kelly. Rebuttal, Mr. Stafford. Thank you, Your Honor. Thank you again, Your Honor. We keep getting back to Section 23 of the Workers' Compensation Act. And simply put, this section of the Workers' Compensation Act doesn't apply. The appellate court used it to nullify the release that was in place that the Van Cleaves signed with full knowledge of the existence of the claims that were pending. And Section 23 can't be used as a sword to carve up the release. There's just no basis for that. Section 23 calls for two things. An employee cannot waive any rights to compensation that may be afforded him or her under the Act. And an employer cannot use the release in any subsequent proceeding to bar any sort of further claim, brought by the employee. We didn't have either of those situations here. We didn't have an employee waiving his rights. We just had an employee indemnifying Maxit for any further claim that he tried to pursue. We didn't have an affirmative obligation under either the release or Section 23 of the Act to present anything before the Industrial Commission. The statute only requires of an employer that you not raise the release or the settlement as a bar in any subsequent proceeding. This workers' compensation claim was pending for more than two and a half years before the release was ever signed. There was no subsequent proceeding that was ever taking place in this case. Mr. Van Cleave tried to pursue a workers' compensation claim that he filed back in 2002. So there was really no application of Section 23 based on the facts that we have. There's nothing in the release and there's nothing in the statute that would require anything of Maxit to undertake on its own. There's no affirmative duties, no obligations to Maxit. All it had to do was pay the consideration. $800,000 was given to the Van Cleaves. Why didn't you bring this claim in front of the Commission? If, well, if we were to pursue this before the Commission, I don't think that that would have been the proper form. This case involves strictly. You have to go in and say, hey, this claim's been released? Because what we were dealing with was a simple breach of contract action, and in the Industrial Commission they're just not equipped to deal with remedies at law. Why does the statute require the notice and the approval of the Commission if they're not equipped to do anything? Well, the requirement on the employer is only to the extent that the employer wants to use the release to bar the employee in any subsequent proceeding. But that's not what we had here. We had a release and indemnity agreement that didn't trigger any rights in Maxit until Mr. Van Cleave decided to pursue a further claim. With all due respect, I don't know that that's answering Justice Fitzgerald's point, which is they deal under Section 23, regardless of your take on it, they deal with settlements and approve them all the time. Why wouldn't they be able to take a look at it and determine whether a release was given in this case? Well, our position was that really the Commission wasn't the appropriate form because we were dealing with a breach of contract issue, which called for a remedy at law before the circuit court. We were just trying to assert contractual rights under the release. Wouldn't that render Section 23 meaningless if you could simply avoid it by going into the circuit court? Well, I don't think it would. Well, there's two issues there. One, I think we're getting back to whether Section 23 even applies, and respectfully, I do not think that that section applies in this sort of circumstance. We might decide it applies. That's a possibility. I'm sorry? It's a possibility that we might decide it applies. Yes, it is a possibility. It's necessary to answer the questions about it. Yes. We didn't feel it was appropriate to go before the Commission because we had what we believed a simple breach of contract issue. We didn't have a workers' compensation issue that required us to go before the Commission. And again, there's nothing in the release itself that required MAXIT to go before the Commission. And it sort of cuts both ways. If the release was not intended to release the workers' compensation claim, why didn't the bank leaves have something to that effect specifically inserted into the language of the release? You had the benefit of counsel. That could have been inserted, but it wasn't. We had a general release of all claims, which would have included at the time the pending workers' compensation claim. When you look at Section 23 and you look at the language of the release, I don't see how MAXIT would have thought it appropriate to go before the Commission because MAXIT really didn't have any affirmative obligations to do that. All that MAXIT was required to do was exchange monies for a promise of a release indemnity. So I don't know that it would have been appropriate to go before the Commission because MAXIT wasn't required to do so under the release or Section 23. The only thing that Section 23 of the Workers' Compensation Act required was that MAXIT not raise the release in any subsequent proceeding, and that was an existing proceeding before the Commission. It's not a requirement at this point to go before the Commission. You're before the Commission, right? I mean, you eventually paid out $200,000, right? MAXIT paid out $200,000 on the comp claim. On the prior comp claim that was renewed, yes. So you're before the Commission, but you choose not to make the same argument before the Commission when you are before the Commission and choose not even give it a shot, and you decide, well, we'll just pay some attorney's fees and file a complaint in the circuit court to try to have this resolved. We choose not to go before the Commission. It isn't a question of whether it was appropriate for you to seek approval. We're past that point. Why wasn't it a defense raised in the Commission is a real point. Well, the issue at that point was really to mitigate our damage. I mean, we had another claim pending now by Mr. Van Cleve that we believed was released. We had to do everything we could to limit the damage. If we contested in the Commission, if we filed a declaratory judgment action, as was suggested by the Van Cleves, if we pursued some other types of actions, the damages might have ratcheted up. Certainly the Van Cleves indicated in their brief that their claim sought in excess of $600,000. There's a chance that the Commission could have disapproved of the settlement altogether, thrown it out, thrown out the release, and the damages could have increased greatly. We were trying to limit the scope and extent of our damage. To do that, we wanted to settle this claim that we thought was improperly brought, wrap that up, and then pursue the relief under the release. One thing that counsel touched on and that we haven't addressed yet was the double recovery aspect of this case. The Van Cleves used the same exact documentation in this renewed attempt to assert their workers' compensation claim, and that's really a public policy consideration that troubles me, is how can an employee assert a claim, then release it, knowing full well the terms of the release and the clarity of the release that any and all claims then pending would be released and abandoned, and then have the conscience to pursue the claim further to try and get money for the same injury? That's exactly what happened here. The record shows that the Van Cleves … Well, I don't think that the voluntary payment doctrine renders the double recovery doctrine inapplicable. First, this wasn't a voluntary settlement. This was our affirmative obligation to mitigate damages. So I think the requirement by law to mitigate our damages takes away the voluntary aspect of the voluntary payment doctrine. Counsel cited Kim and the Salmonella litigation cases regarding double recovery doctrine and said it's inapplicable to settlement agreements that are voluntary. Again, this wasn't a voluntary settlement. It was done in light of the legal requirement to mitigate damages. And then also, the settlement agreements in those cases didn't provide for a specific set-off, and I believe our case does. Paragraph 3 of the release of all claims provides for that set-off. It provides a mechanism for Maxit to be indemnified for many and all losses or further damage. That was absent in those cases. And then also, those cases involved employers' lien rights, and that doesn't match with the issue here, which is a simple breach of contract, actually. Thank you, Mr. Pfeiffer. Thank you, Your Honor. And thank you, Mr. Kelly. Case number 105532, Maxit Inc. v. John Van Cleve et al., is taken under advisement as agenda number 13.